UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BAHIA BOWLS FRANCHISING LLC,
a Florida limited liability company,
and NUTRIFARE BRANDS, LLC, a
Florida limited liability company,

      Plaintiffs,

v.                                                            Case No:  2:23-cv-94-JLB-NPM

DJS LLC, a Tennessee limited
liability company, JENNIFER
JABLONSKI, an individual, and
DAVID DUANE JABLONSKI, an
individual,

      Defendants.

_____/

## ORDER

This matter comes before the Court on Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) (the "Motion").  The temporary restraining order requested in the Motion is **GRANTED IN PART** as set forth in the Order below.

## BACKGROUND[1]

Plaintiff Bahia Bowls Franchising, LLC ("Bahia Bowls") is a franchisor of a system providing a fast-casual acai and smoothie café experience.  (Doc. 5 at ¶¶ 5, 10).  Through a Trademark License Agreement with plaintiff Nutrifare Brands,

---

[1] Although Defendants have appeared in this matter via their attorneys, Defendants have not yet filed anything to contradict the facts Plaintiffs allege in their amended complaint and their Motion.  (*See* Docs. 12-13).  Accordingly, the Court has no choice but to rely on Plaintiffs' well-pleaded allegations.

1

LLC ("Nutrifare" and, together with Bahia Bowls, "Plaintiffs"), Bahia Bowls licenses others to operate these fast-casual acai and smoothie cafes under the federally-registered trademarks "Bahia Bowls Acai Café" (Registration No. 6550687, registered November 9, 2021) and "Bahia Bowls" (Registration No. 5699492, registered March 12, 2019) (collectively, the "Bahia Bowls Marks").  (*Id.* at ¶¶ 10, 14).  A copy of the certificates of registration for the Bahia Bowls Marks are attached to the Amended Verified Complaint.  (*See* Doc. 5-1).  The "Bahia Bowls Acai Café" mark indicates that "[t]he color(s) purple, green, and white is/are claimed as a feature of the mark" and:

> The mark consists of the words "BAHIA BOWLS", depicted in stylized purple capital letter, "BAHIA" to the left of a design comprised of three purple berries, each with a white dot, and two green leaves, each featuring white veins, all placed above the words "ACAI CAFÉ" depicted in stylized green letters, with the "I" dotted and the "E" accented, and "BOWLS" to the right of the design.

(Doc. 5-1 at 1).



Plaintiffs allege that the Bahia Bowls Marks have been used exclusively by Bahia Bowls and its designated licensees in connection with the operation of Bahia Bowls cafes since December 2017.  (*See* Doc. 5 at ¶ 16).  Plaintiffs also allege that the Bahia Bowls Marks have become "valuable asset[s] of substantial and inestimable worth" and that they are a "symbol of quality dining experience served by Bahia Bowls."  (*Id.* at ¶ 17).  Plaintiffs further allege that "Bahia Bowls has a

vital economic interest in protecting its name and the Bahia Bowls Marks" and that "[t]he preservation and protection of its name and the Bahia Bowls Marks are essential [to] the maintenance of the quality of Bahia Bowls cafes and the goodwill and reputation associated with them." (*Id.*)

On or about August 18, 2020, Bahia Bowls entered into a franchise agreement with defendant DJS LLC ("DJS") (the "Franchise Agreement"). (*Id.* at ¶ 18). The Franchise Agreement is attached to the complaint. (*See* Doc. 5-2). The Franchise Agreement states that "[e]xcept as to claims governed by federal law, Florida law governs all claims that in any way relate to or arise out of this Agreement or any of the dealings of the parties." (Doc. 5-2 at 45). Defendants Jennifer Jablonski and David Duane Jablonski signed an Unlimited Guaranty and Assumption of Obligations, which is attached as Schedule 3 to the Franchise Agreement. (*See* Doc. 5-2 at 55–56; Doc. 5 at ¶ 19).

Defendants opened a Bahia Bowls location in Maryville, Tennessee in May 2021. (Doc. 5 at ¶ 20). Plaintiffs allege that in January 2023, DJS became in default of the Franchise Agreement because it, among other things, failed to pay monthly royalties and gift card statements for December 2022. (*Id.* at ¶ 22). Plaintiffs allege that on February 1, 2023, they sent a Notice of Default and Termination to Defendants (the "Notice of Default"), advising them of their various defaults under the Franchise Agreement, and providing them an opportunity to cure, in accordance with the Franchise Agreement. (*Id.* at ¶ 23; *see also* Doc. 5-3). The Notice of Default indicated that, if the defaults were not cured within five days,

the Franchise Agreement would "automatically terminate at 12:01 a.m. on Wednesday, February 8, 2022 [sic]."  (Doc. 5 at ¶ 23; Doc. 5-3 at 2).

Plaintiffs allege that Defendants failed to cure their defaults within five days and, as such, the Franchise Agreement automatically terminated on February 8, 2023.  (Doc. 5 at ¶¶ 24–25).  On February 8, 2023, Bahia Bowls sent a Notice of Obligations Upon Termination (the "Notice of Obligations") to an attorney who, according to the Notice of Obligations, had sent a letter to Plaintiffs after they received the Notice of Default.  (Doc. 5 at ¶ 25; *see also* Doc. 5-4 at 1).  The Notice of Obligations reminded Defendants of their obligations upon the termination of the Franchise Agreement and indicated that unless Defendants complied "with their obligations under Section 17 of the Franchise Agreement by 5:00 p.m. on Thursday, February 9, 2023, including, but not limited to, by closing down the former Bahia Bowls franchise location, Bahia Bowls [would] be left with no choice but to commence litigation and seek preliminary, injunctive relief."  (Doc. 5 at ¶ 25; Doc. 5-4 at 2).

Plaintiffs allege that Defendants have "continued operating the formerly-franchised Bahia Bowls café using the Bahia Bowls Marks and the Bahia Bowls System (as defined in the Franchise Agreement).  (Doc. 5 at ¶ 26).  As of the filing of the Amended Verified Complaint, according to Plaintiffs, Defendants changed their name on social media, but the signage at the location remained the same.  (*Id.*).  Plaintiffs also allege that, in announcing their new name, Defendants continued to

use the Bahia Bowls Marks.  (*Id.*).  Plaintiffs included a screenshot of a Facebook

post from Fresh (Maryville) stating:

> WE ARE NO LONGER OPERATING AS A Bahia Bowls
> FRANCHISE . . . Unfortunately this means we will not be
> offering ONLINE ORDERING at this time. We apologize
> for any inconvenience this may cause you.  Please call in
> any order to be picked up in store or curbside. . . .

(*Id.*).  Further, Plaintiffs attached a screenshot of defendant Jennifer Jablonski's

Facebook page, which stated: "Come in and see us today while we are transitioning

out of our franchise! (Formerly Bahia Bowls) . . . Support a local small business that

wants to stick around."  (*Id.* at ¶ 27).  The screenshot includes a photo which,

according to Plaintiffs, included "pictures of the Bahia Bowls Marks, and Bahia

Bowls' products and recipes, all while noting that their new venture *was* a Bahia

Bowls . . . ."  (*Id.*).  The Court cannot discern from the screenshot whether the photo

in that Facebook post includes any of the Bahia Bowls Marks or Bahia Bowls'

products and recipes.  Plaintiffs also claim that defendant Jennifer Jablonski

"acknowledged – via Social Media – that their new café would be offering the same

kind of items as their formerly-franchised Bahia Bowls café," but the Amended

Verified Complaint does not include a screenshot or any other evidence supporting

that allegation.  (*Id.* at ¶ 28).  Finally, Plaintiffs attached to the Amended Verified

Complaint a copy of Defendants' Facebook page as of the date of the amended

complaint, which includes a post from February 9th, indicating "Fresh (Maryville)

updated their profile picture" and a photo of a purple, green, and white logo with

the text "Bahia Bowls Acai Café," depicted in stylized purple capital letters with

three purple berries, each with a white dot, and two green leaves, each featuring

white veins, above the text.  (*See* Doc. 5-5 at 1).



Section 17 of the Franchise Agreement, titled "Rights and Duties Upon

Expiration or Termination," states that upon termination or expiration DJS would

"immediately cease to operate the Franchised Business and shall not thereafter,

directly or indirectly, represent to the public or hold itself out as a present or former

franchisee of Franchisor."  (Doc. 5-2 at 35).  That section also includes a Post-

Termination Covenant Not to Compete, which states that neither DJS nor any

"holder of a legal or beneficial interest in [DJS], nor any officer, director, executive,

manager or member of the professional staff of Franchisee," would, for a period of

two years:

> (a) offer Competitive Business services located or operating
> (a) at or within a twenty-five (25) mile radius of the
> Franchised Business, or (b) within a twenty-five (25) mile
> radius of any other Bahia Bowls Business in existence at
> the time of termination or expiration, or (c) any other

> business owned or operated by the Franchisor in existence
> at the time of termination or expansion; [or]
>
> (b) solicit or otherwise attempt to induce or influence any
> customer, employee or other business associate of
> Franchisor to terminate or modify his, her or its business
> relationship with Franchisor or to compete against
> Franchisor . . . .

(Doc. 5-2 at 36).

Moreover, the Franchise Agreement states:

> If Franchisee operates any other business, Franchisee
> shall not use any reproduction, counterfeit, copy or
> colorable imitation of the Marks, either in connection with
> such other business or the promotion thereof, that is likely
> to cause confusion, mistake or deception, or that is likely to
> dilute Franchisor's rights in the Marks.

(*Id.*)

On February 13, 2023, Plaintiffs filed a Verified Complaint against "JDS LLC," David Jablonski, and Jennifer Jablonski. (*See* Doc. 1). On February 15, 2023, Plaintiffs filed the Amended Verified Complaint. (*See* Doc. 5). The amended complaint includes counts for (i) Trademark Infringement, Unfair Competition, and False Designation of Origin (Counts I and II); (ii) Trademark Dilution (Count III); (iii) breach of contract (Counts IV and V); (iv) Unjust Enrichment/Restitution (Count VI); (v) Unfair Competition (Count VII); and (vi) Violation of Florida's Deceptive and Unfair Trade Practices Act (Count VIII). (*Id.*) On that same date, Plaintiffs filed the Motion. (*See* Doc. 6). On February 16, 2023, the Court ordered Plaintiffs to file, among other things, further affidavits and certifications explaining the need for relief without notice to Defendants and any efforts to give notice to

7

Defendants on or before February 23, 2023.  (*See* Doc. 7).  On February 22, 2023, six days after the Court's order, Plaintiffs filed several returns of service and notices, which the Court finds are in substantial compliance with the Court's order.  (*See* Docs. 8–11).  On February 24, 2023, counsel for Defendants filed notices of appearance.  (Docs. 12, 13).

## LEGAL STANDARD

A party seeking a temporary restraining order must establish "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that entry of the relief would serve the public interest."  *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005).  Controlling Eleventh Circuit precedent is clear that "injunctive relief may not be granted unless the plaintiff establishes the substantial likelihood of success criterion."  *Id.* at 1226 (citing *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc)).  Plaintiffs argue that they are likely to succeed on the merits of their claims seeking equitable relief against Defendants for breach of the Franchise Agreement (Count IV), violation of Bahia Bowls' trademark rights and competition law (Counts I – III, VII), and unjust enrichment (Count VI).  The Court will analyze each claim in turn.

## ANALYSIS

### I.     Breach of the Franchise Agreement

> i.     *Plaintiffs have established a likelihood of success on the merits of their breach of contract claim.*

Under Florida law, a covenant not to compete is valid if it is reasonably limited in time and area, and furthers a "legitimate business interest." *R.J. Gators Franchise Systems, Inc. v. MBC Restaurants, Inc.*, No. 2:05-cv-00494-VMC-DNF, 2005 WL 4655379, at *4 (M.D. Fla. Nov. 9, 2005). "A legitimate business interest specifically includes the protection of trade secrets, confidential business information, and goodwill associated with a trademark, service mark or trade dress." *Id.* (citation omitted).

The Franchise Agreement here restricts Defendants from opening a competing business within a 25-mile radius of any Bahia Bowls locations for two years. (Doc. 5-2 at 36). Both a 25-mile restriction and a two-year time limit are reasonable. *See, e.g., CiCi Enterps, LP v. Four Word Motion, LLC*, No. 6:16-cv-1679-Orl-41KRS, 2016 WL 9244626, at *8 (M.D. Fla. Oct. 17, 2016) ("[T]his Court is convinced that the Non-Competition Covenant, which has a two-year time period and twenty-mile geographic limitation, and which is narrow in scope—only precluding Defendants from participating in the operation of a pizza or Italian-foods restaurant—is reasonable in light of Plaintiff's protectable business interests."); *Medi-Weightloss Franchising USA, LLC v. Medi-Weightloss Clinic of Boca Raton, LLC*, No. 8:11-cv-2437-T-30MAP, 2012 WL 260776, at *1 (M.D. Fla. Jan. 3, 2012) (approving covenant against competition that restricted competition within a 25-

mile radius of the franchise location and other franchise businesses); *Medi-Weightloss Franchising USA, LLC v. Sadek*, No. 8:09-cv-2421-T-24MAP, 2010 WL 1837767, at *4 (M.D. Fla. Mar. 11, 2010) (holding that a restrictive covenant for one year or less is reasonable and for more than three years is unreasonable as to a former franchisee); *R.J. Gators Franchise Systems, Inc.*, 2005 WL 4655379, at *4 (finding that a covenant restricting a defendant from operating a competing business within ten miles of the former franchise for a period of 24 months contained reasonable temporal and geographic restrictions); *Graphic Business Systems, Inc. v. Rogge*, 418 So. 2d 1084 (Fla. 2d DCA 1982) (finding a two-year time restriction reasonable and upholding a 75-mile radius geographic restriction).  The Court also finds the restriction reasonable because it is limited to "Competitive Business[s]."  (*See* Doc. 5-2 at 36).[2]

Plaintiffs allege that Defendants breached the covenant not to compete by continuing to operate their cafe in the same location that they formerly operated the Bahia Bowls franchise.  (*See* Doc. 5 at ¶¶ 26–27, 61–63).

Plaintiffs' legitimate business interests include, "at least, protection of: (1) trademarks, service marks and trade dress and the goodwill associated therewith, and (2) valuable confidential information belonging to the Plaintiff."  *R.J. Gators*

---

[2] "Competitive Business" means, with certain exceptions, "any business that offers a fast casual dining setting and serves acai bowls, smoothies, or other similar dishes under any service system, or any other mass market restaurant experience, or other dining services that offer the same products as or similar to those provided by Bahia Bowls businesses or in which Trade Secrets or other Confidential Information could be used to the disadvantage of Franchisor, any Affiliate or its franchisees . . . ." (Doc. 5-2 at 6–7).

*Franchise Systems, Inc.*, 2005 WL 4655379, at *5 (citation and quotation marks omitted); (*see* Doc. 5 at ¶ 17 ("Bahia Bowls has a vital economic interest in protecting its name and the Bahia Bowls Marks.  The preservation and protection of its name and the Bahia Bowls Marks are essential [to] the maintenance of the quality of Bahia Bowls cafes and the goodwill and reputation associated with them.")).

For the foregoing reasons, Plaintiffs are likely to succeed on the merits of their breach of contract claim.

   ii.   *Plaintiffs have established a presumption of irreparable harm.*

"The Eleventh Circuit deems injunctions the normal and favored remedy for violations of restrictive covenants because monetary damages are typically quite difficult to establish and often cannot adequately compensate for that type of breach." *R.J. Gators Franchise Systems, Inc.*, 2005 WL 4655479, at *5.  "The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *U.S. Lawns, Inc. v. Landscape Concepts of CT, LLC*, 6:16-cv-929-Orl-41DAB, 2016 WL 9526340, at *8 (M.D. Fla. Oct. 31, 2016).  Having established that the non-compete clause in the Franchise Agreement is enforceable and that Defendants violated its term, the Court finds that Plaintiffs are entitled to a presumption of irreparable injury.  *See Medi-Weightloss Franchising USA, LLC*, 2010 WL 1837767, at *6 ("[The franchisor] has shown that if a preliminary injunction does not issue, it will have to compete with former franchisees . . . who agreed not to engage in such competition, . . . will

11

suffer possible dilution and confusion associated with its . . . products and services, and will prevent [the franchisor] from enforcing its agreements with other franchisees.  Accordingly, [the franchisor] has met its burden as to the irreparable harm prerequisite.").

      iii.    *The injury to Plaintiffs without a temporary restraining order outweighs any potential injury to Defendants if a temporary restraining order is entered.*

"Generally, a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction preventing further violations of the agreement."  *Winmark Corp. v. Brenoby Sports, Inc.*, 32 F. Supp. 3d 1206, 1224 (S.D. Fla. 2014) (citing *Dunkin' Donuts Franchised Restaurants LLC v. D & D Donuts, Inc.*, 566 F. Supp. 2d 1350, 1361 (M.D. Fla. 2008)).

Plaintiffs argue:

> The denial of an injunction will adversely affect Plaintiffs' other franchisees that play by the rules and abide by the terms of franchise agreements.  Licensed franchisees have placed their trust in Plaintiffs to protect their substantial investment in the system, and have a significant interest in preventing former franchisees from operating without following the franchise's established policies and procedures.

(Doc. 6 at 19).  The Court agrees and finds that the current injury to Plaintiffs outweighs any potential injury to Defendants if a temporary restraining order is entered.

iv.   *The public interest would be served by the entry of the temporary restraining order.*

The public interest will not be disserved by the entry of a temporary restraining order because "[i]t is not in the public interest to condone [Defendants'] material breach of the [Franchise] Agreement or to allow [Defendants] to continue to operate the franchise with the unauthorized use of [the Bahia Bowls Marks] for an extended period of time." *See Burger King Corp. v. Lee*, 766 F. Supp. 1149, 1157 (S.D. Fla. 1991).

## II.   Violation of Bahia Bowls' trademark rights

i.   *Plaintiffs have established a likelihood of success on the merits of at least some of their trademark claims.*

To prevail on trademark infringement and unfair competition claims under the Lanham Act, "the plaintiff must show the defendant used its mark in commerce without its consent and the unauthorized use would likely confuse or deceive the public." *Delta Sigma Theta Sorority, Inc. v. Bivens*, No. 2:14-cv-147-FtM-38CM, 2014 WL 1330018, at *2 (M.D. Fla. Apr. 1, 2014) (citations omitted); *see also Chanel, Inc. v. Italian Activewear of Fla., Inc.* 931 F.2d 1472, 1475 n.3 (11th Cir. 1991) ("[T]he same facts support a cause of action for unfair competition as for trademark infringement."). "[I]n the context of a franchise, to obtain preliminary injunctive relief, Plaintiffs must establish that they properly terminated the Franchise Agreements with Defendants." *Dunkin' Donuts Franchised Restaurants LLC v. EMST Donuts, LLC*, No. 2:07-cv-422-FtM-34DNF, 2007 WL 9718746, at *7

13

(M.D. Fla. Sept. 17, 2007) (citing *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1308 (11th Cir. 1998)).

Here, Defendants are using the Bahia Bowls Marks in commerce without Plaintiffs' consent, as evidenced by the allegations and Facebook screenshots in Plaintiffs' Verified Amended Complaint.  (*See* Doc. 5 at ¶¶ 26–28).  The use is likely to cause confusion because, as shown in the Verified Complaint (Doc. 5-5), it appears that Defendants' new business has continued to use Bahia Bowls's marks after the Franchise Agreement was terminated.  *See Dunkin' Donuts Franchised Restaurants LLC*, 2007 WL 9718746, at *8 ("[N]umerous courts have recognized that strong likelihood of consumer confusion [and] have found a substantial likelihood of success on a trademark infringement claim when the movant has established that the franchise agreement was terminated and the former franchisee continued to operate using the franchisor's marks.").  The Eleventh Circuit has found:

> Common sense compels the conclusion that a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks.  A patron of a restaurant adorned with the [franchisor's] trademarks undoubtedly would believe that [the franchisor] endorses the operation of the restaurant. Consumers automatically would associate the trademark user with the registrant and assume that they are affiliated.  Any shortcomings of the franchise therefore would be attributed to [the franchisor].  Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement.

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1492–93 (11th Cir. 1983) (citations omitted).

Moreover, Plaintiffs have adequately established that they properly terminated the Franchise Agreement.  The Franchise Agreement states the following:

> Except as otherwise provided . . . , Franchisor has the right to terminate this Agreement for the following breaches and defaults by giving notice of such termination stating the nature of the default; provided, however, that Franchisee may avoid termination by curing such default or failure (or by providing proof acceptable to Franchisor that Franchisee has made all reasonable efforts to cure such default or failure and shall continue to make all reasonable efforts to cure until a cure is effected if such default or failure cannot reasonably be cured before the effective date of the termination) within the specified period:
>
> > (a) within five (5) days of receiving notice of Franchisee's failure to pay any amounts due to Franchisor . . . .

(Doc. 5-2 at 34).  Plaintiffs have provided a letter that their attorneys sent to Defendants giving notice of Defendants' default and providing an opportunity to cure.  (Doc. 5-3).  Defendants have not responded to the injunctive relief sought here and have therefore not contested whether such notice was received or was proper.

Accordingly, because Plaintiffs have shown that they properly terminated the Franchise Agreement, that Defendants continued to use the Bahia Bowls Marks in commerce without Plaintiffs' consent, and that the use is likely to cause confusion,

Plaintiffs have shown that they are likely to succeed on the merits with respect to several of their Lanham Act trademark infringement claims.

      ii.    *Plaintiffs have established the likelihood of irreparable harm.*

"Once a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, a presumption of irreparable harm arises." *Fantasia Distrib., Inc. v. S. Wholesale, LLC*, No. 8:14-cv-407-T-27TGW, 2014 WL 12576636, at *1 (M.D. Fla. Feb. 18, 2014) (citing *N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227 (11th Cir. 2008)); *see also Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) ("It is generally recognized in trademark infringement cases that (1) there is not [an] adequate remedy at law to redress infringement and (2) infringement by its nature causes irreparable harm."). Thus, because Plaintiffs have established a likelihood of success on the merits of several of their trademark infringement claims, a presumption of irreparable harm exists. Accordingly, upon review of the allegations in the Amended Verified Complaint, the Court is satisfied that Plaintiffs have established a likelihood of irreparable harm. *See id.*

      iii.    *The injury to Plaintiffs without a temporary restraining order outweighs any harm Defendants might suffer.*

The injury to Plaintiffs that will follow if the temporary restraining order is not granted outweighs any harm Defendants might suffer if the temporary restraining order is granted since Defendants are not permitted to use the Bahia Bowls Marks. *See, e.g., Delta T, LLC v. Kale Fans America S.A. De C.V.*, No. 6:20-cv-170-Orl-40EJK, 2020 WL 3250188, at *4 (M.D. Fla. Feb. 3, 2020) ("Although

Defendant possibly stands to lose sales of its allegedly counterfeit and infringing products if the temporary restraining order is issued, this will not constitute a legitimate hardship because Defendant has no right to engage in counterfeiting and infringing activities.") (citations omitted).

        iv.   *The public interest would be served by the entry of the temporary restraining order.*

"The public has an interest in not being misled about the source of trademarked products and in an accurate trademark registry.  An injunction would serve these public interests."  *Id.* (citation omitted).  "Florida policy also favors protection of businesses and their trademarks."  *Id.* (citations omitted).

## III.   Unjust Enrichment

   i.   *Plaintiffs have not shown a likelihood of success on the merits with respect to their unjust enrichment claim.*

In Florida, the elements of a cause of action for unjust enrichment are:

> (1) the plaintiff has conferred a benefit on the defendant;
> (2) the defendant has knowledge of the benefit; (3) the
> defendant has accepted or retained the benefit conferred;
> and (4) the circumstances are such that it would be
> inequitable for the defendant to retain the benefit without
> paying fair value.

*Media Services Grp, Inc. v. Bay Cities Commc'ns, Inc.*, 237 F.3d 1326, 1331 (11th Cir. 2001) (citations omitted).  Plaintiffs argue that "Defendants used Bahia Bowls' Marks and goodwill to lure customers into the formerly-franchised location to garner business under the Fresh Maryville name."  (Doc. 6 at 18).

     This argument fails because "[r]ecovery on a theory of unjust enrichment . . . is only available when as a matter of fact there is no legal contract."  *Camp Creek*

*Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1413 (11th Cir.

1998); *see also Certified Collectibles Grp, LLC v. Globant, LLC*, No. 8:19-cv-1962-

SDM-AEP, 2021 WL 1214963, at \*7 (M.D. Fla. Mar. 31, 2021) ("Because [plaintiff]

plausibly alleges a breach of contract and because [plaintiff] has an adequate

remedy for a  breach of contract, [plaintiff] cannot state a claim for unjust

enrichment.").

Because Plaintiffs have not established likelihood of success on the merits,

the Court will not address the remainder of the factors as to this claim.  *See Schiavo*

*ex. rel Schindler*, 403 F.3d at 1226 ("[I]njunctive relief may not be granted unless

the plaintiff establishes the substantial likelihood of success criterion.").

## IV.   Notice

Federal Rule of Civil Procedure 65(b)(1) indicates that the Court may issue a

temporary restraining order without written or oral notice to the adverse party or

its attorney if two conditions are met.  First, "specific facts in an affidavit or a

verified complaint clearly show that immediate and irreparable injury, loss, or

damage will result to the movant before the adverse party can be heard in

opposition."  Fed. R. Civ. P. 65(b)(1)(A).  Second, the movant's attorney must certify

in writing any efforts made to give notice and the reasons why it should not be

required.  Fed. R. Civ. P. 65(b)(1)(B).

The Court finds that Defendants have received actual notice of this action

and the Motion, as evidenced by the notices of appearance filed on behalf of

Defendants by their attorneys on February 24, 2022 (Doc 12; Doc 13) and by

Plaintiffs' attorney's certification (Doc. 11).  Plaintiffs' attorney's certification illustrates the numerous attempts at service made by Plaintiffs starting on February 15, 2023, including via email and Federal Express.  (Doc. 11-1 at ¶¶ 4–5).  Notwithstanding, even if no notice had been given, the Court finds, as described in this Order, that the facts in the amended complaint and the Affidavit of Evan M. Goldman (Doc. 11-1) illustrate that immediate and irreparable harm has been ongoing and will continue before Defendants can be heard in opposition.  Accordingly, notice was not required and the Court finds that entry of a temporary restraining order is appropriate even though Defendants have not responded to the Motion.

## V.    Security

Federal Rule of Civil Procedure 65 states that the court may issue a temporary restraining order "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).

Bahia Bowls asks that the injunction be issued without security because Defendants agreed, in Section 23.10 of the Franchise Agreement, to waive the bond requirement.  (Doc. 6 at 22).  Section 23.10 of the Franchise Agreement states, in relevant part, as follows: "You agree that if we are forced to bring suit to enforce any provision of this Agreement, you agree to waive any requirement that we post bond to obtain a temporary, preliminary, or permanent injunction to enforce these duties."  (Doc. 5-2 at 47).

Where a contract waives requirement of a bond and no significant financial constraints are imposed by a TRO, courts in this district have waived the bond requirement.  *See JTH Tax LLC v. Silva*, 8:20-cv-02288-MSS-AEP, 2020 WL 3266568, at *3 (M.D. Fla. Mar. 11, 2020) (waiving bond requirement).  "Given Defendants' explicit [contractual] agreement to waive bond and the fact that any costs or damages likely sustained by Defendants result from their failure to abide by the provisions of the Franchise Agreement, [Plaintiffs] should not be required to post any bond."  *See JTH Tax, LLC v. Gilbert*, No. 8:22-cv-625-CEH-AEP, 2022 WL 1619594, at *17 (M.D. Fla. May 12, 2022), *report and recommendation adopted* 2022 WL 3098407 (M.D. Fla. Aug. 4, 2022).

## CONCLUSION

In consideration of the foregoing, it is hereby

**ORDERED** that:

1.      Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 6) is **GRANTED in part**.

2.      Plaintiffs' Motion is granted to the extent that DJS and each of its officers, directors, executives, managers, and/or members of DJS's professional staff (which the Court finds includes each of the other Defendants) having notice of this Order are hereby temporarily restrained and enjoined from, and shall, to the extent applicable, immediately discontinue:

a. Operating a competing business or divulging information in violation of the non-compete, non-solicitation, and post-termination provisions of the Franchise Agreement; and/or

b. Infringing upon Bahia Bowls' trademarks, trade names, service marks, and related marks.

3.    This Temporary Restraining Order shall remain in effect until the date for the hearing on the Motion for Preliminary Injunction set forth below, or until such further date as set by the Court or stipulated by the parties, but, absent a request for an extension, shall not exceed fourteen (14) days from the date of entry of this order pursuant to Fed. R. Civ. P. 65(b)(2);

4.    A hearing on the Motion for Preliminary Injunction shall be held on **March 14, 2023 at 11:00 a.m. (ET)** via Zoom Video Conference, and the parties will receive a separate Zoom invitation by e-mail;

5.    On or before **March 7, 2023 at 5:00 p.m. (ET)**, the parties are directed to file a joint notice addressing whether they are amenable to holding all trials and hearings in this matter in this Court's Tampa Division.

6.    Because Defendants agreed to waive the bond requirement under Section 23.10 of the Franchise Agreement, and in the exercise of the Court's discretion, Plaintiffs are not required to post a bond pursuant to Federal Rule of Civil Procedure 65(c);

7.    Plaintiffs shall serve copies of the Motion and this Order on Defendants' counsel of record via electronic mail and overnight mail; and

8.     Any response or opposition to the Motion for Preliminary Injunction must be filed with the Court no later than March 10, 2023.  Plaintiffs shall file any reply in further support of their motion no later than March 13, 2023.  Defendants are hereby on notice that failure to appear at the March 14, 2023 hearing may result in the imposition of a preliminary injunction against them.[3]

ORDERED in Fort Myers, Florida on March 1, 2023.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

---

[3] The Court strongly recommends that the parties engage in negotiations to resolve this matter without further Court intervention.  Should the parties jointly notify the Court that they are engaging in meaningful settlement discussions, the Court would entertain a joint motion to continue the March 14, 2023 hearing and otherwise stay any other deadlines.